1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

LAW OFFICE OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
499 14th Street, Suite 300
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile:  (510) 444-6698

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

CARMEN SLAUGHTER, ALICIA CARR,
LARRY LIEBELT, MARIA LUISA CORTEZ,
MICHELLE JORDAN, SHIRLY FERIA,
RICHARD SYKES, BRITTANI SILVA, and
CALVIN KING,

             Plaintiffs,

   vs.

CITY OF STOCKTON, STOCKTON POLICE
DEPARTMENT, KURT WILSON, ERIC
JONES, TREVOR WOMACK, TOM
JERRIGAN, PETER LEMOS, CHUCK
LAMAR , LANE , DANIEL J. GARCIA, AND
SWAIN, RAVI N. SANWAL, MANITA
SANWAL, MOONI SANWAL, AND THE
RAVI N. SANWALL AND MANITA
SANWALL LIVING TRUST,  DOES 1-50.

             Defendants.

Case No.:

CIVIL RIGHTS CLASS ACTION
COMPLAINT FOR DAMAGES AND
INJUNCTIVE AND DECLARATORY
RELIEF

DEMAND FOR JURY TRIAL

# NATURE OF THE CASE

1.    This is an action to remedy violations of civil rights brought pursuant to 42 U.S.C.A.

§1983, including warrantless intrusions and searches into plaintiffs' homes, and the denial of

equal protection and deprivation of property interests without due process of law in violation of

the Fourth and Fourteenth Amendment of the United States Constitution and the Articles 1, 7,

13 and 19 of the California Constitution

## JURISDICTION

2.      The jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 1983 et seq.; 28 U.S.C. §§ 1331 and 1343(a). Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. § 1367. Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201 and 2202, and 42 U.S.C. §1983. Venue is proper in the Eastern District of California as the events complained of occurred in this district.

8. Plaintiffs have filed administrative claims with the City of Stockton in compliance with California Government Code §§ 910, et seq. The claims have been denied expressly or by operation of law.

## INTRADISTRICT JURISDICTION

3.      The claims alleged herein arose in the County of San Joaquin, State of California. Therefore venue and assignment under 28 U.S.C. §1391(b) lies in the United States District Court for the Eastern District of California, Sacramento Division.

4.      This is an action for injunctive relief and for damages in excess of  $1 million.

## THE PARTIES

5.      Plaintiffs, Carmen Slaughter, Alicia Carr, Larry Liebelt, Maria Luisa Cortez, Michelle Jordan, Shirley Feria, Richard Sykes, Brittani Silva, and Calvin King are tenants who rent apartments in one of three parcels of real property, 20 Gateway Court, 23 Gateway Court, and 39 Gateway Court, in the City of Stockton (hereinafter called "Gateway Apartments").  They were injured while residing at Gateway Apartments.

6.      Starting in December, 2014, tenants suffered multiple warrantless entries and searches by the Stockton Police Department in a Stockton Police Department program called "The Blitz", in violation of plaintiffs' and class members' constitutional right to be safe from search and seizure pursuant to the 4th and 14th amendments of the United States Constitution. They sue on their own behalf and as representatives of a class of individuals who are tenants and residents at Gateway Apartments, who were subjected to these warrantless intrusions and searches, and who have all had to endure the dilapidated, insect infested, and dangerous conditions at Gateway Apartments.

7.      The Gateway Apartments contain 170 units and serve low income tenants.   Most if not all the units are occupied by families.  Many of the tenants are African American or Hispanic, or suffer from a disability.  Carmen Slaughter, Alicia Carr, Richard Sykes, Calvin King and Shirley Feria are African American.  Maria Luisa Cortez and Brittani Silva are Hispanic.  And Larry Liebelt is a physically disabled white male, who has resided in 20 Gateway Court since May, 2011.

8.      Defendant City of Stockton, is a public entity organized under the California Constitution and laws of the State of California, and is located in the County of San Joaquin. The City of Stockton is responsible for the policies and funding of the Stockton Police Department, which is a department within the City of Stockton.

9.      Defendant Kurt Wilson is the City Manager for the City of Stockton. Defendant Wilson held and holds the top administrative decision making, command and/or policy making position for the City of Stockton.  He is and was responsible for the operations of the City of Stockton; and for implementing the goals and policies of the City of Stockton, control and allocation of budget and resources, supervision of the Chief of Police and review and implementation of policies for police officers. At all times relevant herein, defendant Wilson was acting under the color of law, under color of authority and in the scope of his employment as City Manager for the City of Stockton.  He is sued in his official capacities.

10.     Defendant Eric Jones, is the chief police, and is in charge of the Stockton Police Department (hereinafter "SPD") , and at all times herein was acting under color of law and color of his authority as chief of police.  As chief of police defendant Jones is responsible for the acts of the officers and civilian employees while they are in the performance of their duties for SPD. As such, he has caused, created, authorized, condoned, ratified, approved, or knowingly acquiesced in the illegal, unconstitutional, and inhumane actions, policies, and practices of the SPD, as described below. He has, therefore, directly and proximately caused, and will continue to cause in the future, the injuries and violations of rights set forth below. Defendant Jones is sued in his official capacity.

11.     Defendant Trevor Womack is the Deputy Chief of Police in charge of Operations, and has direct supervisory responsibility for the Special Operations Division of the Police

Department, which is the Division that includes the Neighborhood Services Division which implemented "The Blitz" and engaged in the complained of warrantless entries and searches. Defendant Captain Tom Jerrigan is the specific officer responsible for the Neighborhood Services Division, which prepared, planned, and executed the warrantless intrusions and searches. Defendant Peter Lemos is the manager of the Neighborhood Services Division. Defendants Womack, Jerrigan and Lemos along with defendant Jones, engaged in and participated in the planning, supervision, and the execution of the unconstitutional and illegal intrusions and searches.

12.     Defendants Chuck LaMar , Lane, Daniel J. Garcia, and Swain were the specific employees tasked with carrying out The Blitz.  Plaintiffs do not have the complete names of Lane and Swain, and so they are identified herein by the names they are known as until such time as Plaintiffs obtain their true and complete legal names, and will then request leave of the Court to amend, and insert said true and complete legal names.   These defendants forcibly intruded into Plaintiffs' homes, carried out the illegal and unconstitutional warrantless searches, and threatened Plaintiffs.   Said Defendants were at all times herein, employee and was acting under the color of law, under color of authority and in the scope of their employment with the SPD and the City of Stockton.

13.     Ravi Sanwal, Manita Sanwal, and Mooni Sanwal are individuals who are hold an Ownership interest in the subject real properties, 20 Gateway Court, 23 Gateway Court and 39 Gateway Court (hereinafter referred to as "Gateway Apartments"), which are located in the City of Stockton, County of San Joaquin;  are residents of El Dorado County, State of California.

14.  The Ravi N. Sanwal and Manita Sanwal Living Trust, which is a trust for the benefit of defendants Ravi Sanwal and Manita Sanwal, is an entity which also holds an Ownership interest in the Gateway Apartments. Sanwal, Manita Sanwal, Mooni Sanwal and the i N. Sanwal and Manita Sanwal Living Trust are hereinafter referred to as " Owners".

15.     Plaintiff is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. The Doe defendants include individuals, other entities including governmental entities, who

participated in the conduct complained of herein. Plaintiff is informed and believe and therefore allege that each of the Doe defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said defendants proximately caused said incidents, injuries and damages by reason of their negligence, breach of duty, negligent supervision, management or control, violation of constitutional and legal rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission.  Plaintiff will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

16.     Each of the defendants, including defendants DOES 1 through 50, caused, and is responsible for, the below-described unlawful conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to plaintiff and class members' rights, to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

17.     In doing the acts alleged herein, Does 1-25, acted within the course and scope of their employment of the City of Stockton.


**FACTUAL ALLEGATIONS**

18.     Over the period of several months during the period December, 2014 through March, 2015, the Stockton Police, and its euphemistically named Neighborhood Services Division, implemented a program, named Neighborhood Blitz.   As part of the Neighborhood Blitz, officers and employees of the Stockton Police Department, commenced what were called housing code violations inspections pursuant to Stockton's Municipal Code Section 8.32 et seq., which were in the guise of illegal intrusions and warrantless searches of plaintiff's and class member's homes.  Stockton Municipal Code §8.32 mandates that wholesale inspections of all

rental units in the city.  The Stockton Municipal Code section also provides that certain rental units are exempt from City inspections and permitted to "self-inspect".   Under the terms of this "self-inspection" exemption, Defendants City of Stockton and SPD and the individual defendants identified in paragraphs 10, 11 and 12, have selected only low income individuals in selected sections of Stockton to subject to the denigration and invasion of these wholesale Housing Code Inspections. Defendants City of Stockton and SPD and the individual defendants identified in paragraphs 10, 11 and 12,  have selected as "targets" for neighborhood blitz, those communities with a significant percentage of poor, black, latino and disabled residents.  Using the term, Neighborhood Blitz, signals the intent of the Stockton Police to treat these inspections as an invasive, war-like process.  The stated purpose of the Neighborhood Blitz program was to clean up "blight and high crime areas" by combining uniformed policing and code enforcement, and targeting specific identified targets.

19.   Housing Code inspections in Stockton are not under the control and authority of the Community Development Department which reviews and grants building permits and other construction permits, such as planning, utilities, engineering and fire review.  Rental housing units are under the control and direction of the police department.  The City of Stockton states that one goal of the program is to create a "crime-free environment".   Plaintiffs and class members, residents of the specific targeted communities, are not accused of any crime, consider these rental housing inspections a euphemism for unconstitutional police intrusion into their homes and a means to execute illegal searches and interrogations.  Plaintiffs consider these unconstitutional intrusions a method of the Stockton Police to deprive them of their home, to render them homeless and to drive them and their families out of the neighborhood.

20.   These police officers and employees engaged in a wholesale, systematic, unjustified and wrongful harassment and intimidation of poor and low income tenants, many of whom are African American or Hispanic, some of whom are physically disabled, in the Kentfield Neighborhood, including the residents on Gateway Court.  These wrongful actions are part of an intentionally nasty, punitive and wholly unjustified tactic of the Stockton Police and part of the Police strategy to target low income people, racially profile, and deny low income people, people with disabilities and people of color, their Constitutional rights, under the guise of

housing code inspections.    In carrying out their actions, these deputies and employees of the Stockton Police Department, violated the terms and conditions of the Stockton Municipal code, violated the federal and state constitutional rights of tenants, and intentionally and negligently inflicted emotional distress.

21.    The Stockton Municipal Code and the City of Stockton accords tenants in the City of Stockton different treatment.   Many tenants are permitted to avoid the humiliation and harassment of having armed police and housing inspectors invade your home, particularly during the supper hour, or in the evening, by permitting non-targeted Owners to "self-inspect", while forcibly intruding and searching the tenants who are identified as targets.  The tenants who are targeted are invariably, poor or disabled, and those who are Hispanic or African American.

22.    During this period, under the guise of Code enforcement Inspections, Stockton Police Officers and employees, instead of the 21 days notice as required by Stockton Municipal Code §8.32.080, Stockton Police Officers and employees would demand access, sometimes in less than 24 hours after posting notices.  Despite the fact that the notice stated that tenants are not required to consent to access, Stockton Police officers and employees, including Chuck LaMar, would threaten class members and Plaintiffs by telling them that if they did not provide access they would face criminal charges, that they would be subject to large fines, and that the City could shut down the building, and force them to move into temporary housing or into a homeless shelter such as one run by the American Red Cross.  Stockton Police officers employees intruded at all hours, including during the dinner hour, when residents were sitting down to supper, or in the evening, when people were putting children to bed.   Pregnant women and mothers of infants were intruded up, without regard to the impact on their health, the health of their children or what these mothers and children were doing at the time.   Often, armed Stockton Police officers and employees, including Chuck LaMar, would not even attempt to procure permission to enter, but would push their way into Plaintiffs' and class members' private residences if the front door was open, or if  Claimant or a class member had their front door ajar because they were in the process of entering or exiting their home.  Taking advantage of such opportunities, Stockton Police Officers and employees would often push their way past

Plaintiffs and class members and simply walk into the private residence and start their search. In other instances, where a class member attempted to deny these police officers and employees access, these officers used threats of arrest, fines or physical force to push their way into the residence.

23.     At all times, an armed, uniformed police officer would be present.  This was during the period of time of great social unrest due to the very charged issues of Police shootings of unarmed civilians in the United States, brought to the forefront by the shooting of Michael Brown in Ferguson.  Given that the Stockton Police have shot a number of unarmed individuals, and many Plaintiffs and Class members are aware of the Stockton Police's historical aggression and violence, Plaintiffs and class members were terrified at the presence of an armed police officer demanding access, at the threats relayed and felt that they had no choice but to permit entry into their apartment.  These demands for entries occurred during the daylight hours, during supper time and in the evenings.  At times multiple police cars and multiple uniformed, and armed police officers and police employees would swarm Gateway Apartments conducting these police intrusions and searches under the euphemism of housing code inspections.

24.     Upon entry, Police Officers and employees were rude, and demeaning.  In many apartments, they conducted a police search completely unrelated to housing or building code issues, including upending mattresses, dumping out the contents of drawers, pulling clothes out of closets, and breaking personal property in the process.  They entered bedrooms while people were sleeping.   They examined closets and cupboards.  They looked through the personal belongings of Plaintiffs including prescription medication.  These officers and employees demanded that Plaintiffs and class members provide information completely unrelated to housing code or building code, such as requiring Plaintiffs to tell them who lived in the apartment.  The police and police department employees demanded copies of bills and the rental agreement.  These officers and employees demanded information about the medical condition of the residents of apartments.  Many of these searches had no correlation or relation to building code issues, but were conducted as a police search.  In none of these "inspections" was contraband uncovered, and there were no arrests.

25.   Plaintiffs and many class members attempted to deny defendants SPD and its employees entry to their homes.

26.   Stockton police and Code Inspection visited Plaintiffs and class members at their homes repeatedly and on multiple occasions.  Some class members and Plaintiffs have received demands to pay a fine, without explanation of the basis for the fine, and without having had an opportunity to challenge the legality of the fine.

27.   Despite these repeated and numerous intrusions on the pretext of conducting housing code inspections, the physical condition of Gateway Apartments rapidly became significantly more dilapidated, developed more maintenance and code violations, became crime ridden, developed a large number of vacancies and became insect infested.  Tenants felt harassed and aggrieved and moved out.  The inspections and harassment by SPD made the units difficult to rent.  Units were left vacant.  This in turn made the vacant units a target for vandalism, and illegal squatting by homeless individuals who were not tenants.  Many windows have been broken.  The empty units have been used for illegal activities including drug sales and use, gambling and prostitution.  Neither SPD nor the Owners has taken the necessary steps to secure the vacant buildings and remove the squatting.  The actions required by the SPD and the actions taken by Owners caused a huge explosion of cockroaches.  Some units have had so many cockroaches, they formed black stains in the corners of the ceilings, and walls.  People cannot have their toddlers crawl or sit on the floor because cockroaches would crawl on their babies.  Tenants are  unable to keep their apartments clean, and no matter how much effort they expend on maintaining clean conditions, the cockroaches have become an infestation, and reached epidemic proportions.

28.   Due to the extreme age of the appliances, including air conditioners, dampness has accumulated in many apartments, leading to black mold growing on walls.  The situation has become so dire that many tenants are now unable to use their kitchens due to the mold, the cockroach feces and the cockroaches themselves.

29.   Routine maintenance issues, including malfunctioning air conditioners, plumbing leaks, broken cabinets, poorly or non-functioning door handles, deteriorated or damaged floor coverings, poorly functioning and very old appliances abound.  What repairs or maintenance are

attempted by Owners are inadequate, are of poor workman quality, are undertaken by employees hired by Owners without the necessary skills and qualifications to do the work, and by individuals not paid the minimum wage.

30.    When plaintiffs and tenants have complained to Owners about the conditions at Gateway Apartments, Owners' responses are that the conditions at Gateway Apartments are better than housing conditions from India, where Owners are from.

31.    When tenants request repairs or attempt to make repairs themselves, the Owners' response is to aggressively initiate unlawful detainer actions.  Due to the poor quality and numerous habitability violations, tenants who challenge the unlawful detainer actions have been able to prevail in a court of law.  Owners, to circumvent legal process, have been illegally removing mail from tenants and plaintiffs' mailboxes, so that tenants are not informed of the required notices and hearing dates, and so Owners can obtain defaults judgments against such tenants.

32.    Due to the actions required by the SPD and the actions taken by Owners, garbage, glass abandoned appliances and other debris have become strewn all over the outside common areas of Gateway Apartments, creating unsafe and unhealthy environment.

33.    SPD, instead of  targeting the real crime, have instead increased their harassing of the rent paying Tenants, which include threatening Tenants with arrest if they are outside their apartments, stopping Tenants without probable cause and sometimes searching tenants and guests based upon racial profiling.  Non-tenant individuals have taken advantage of the situation, and have trespassed onto Gateway Apartments, occupied vacant units and engaged in various criminal acts including illegal gambling, prostitution, drug use and drug dealing. The actions by the SPD and Owners, instead of making the area better, more crime free, and safer, has increased crime, to the point where Plaintiffs and class members are now afraid of going outside, afraid of letting their children play outside.

34.    As a pattern and practice, SPD engages Owners for a period of time with these inspections, perhaps write citations of violations, and then subsequently declare that the property is not habitable.  SPD then provides tenants with very limited notice, sometimes only eight (8) hours or less, to gather belongings and move out of the premises.  Due to the short

notice provided, most tenants lose all of their furniture and large belongings such as television sets.  Short term housing is provided, sometimes in a homeless shelter, and then the tenants are left to fend for themselves, but become homeless.   Once the building is empty, then the property is more easily remodeled and cherry picked developers are provided governmental financial incentives to conduct the remodeling, to their financial enrichment.   Meanwhile, Tenants within the City of Stockton are rendered homeless.

35.      Based upon this pattern and practice, Plaintiffs believe and therefore allege, that SPD and the City of Stockton are engaging in this pattern and practice with dire future consequences for plaintiffs and class members.  Many plaintiffs and class members are fearful that plaintiffs and many of Gateway Apartment tenants will be forcibly removed and rendered homeless.

36.      Plaintiffs were injured at Gateway Apartments starting in January, 2015 through to the present, through no fault of their own. The injuries suffered from by the Plaintiffs vary in duration and intensity, but these injuries are physical, mental, emotional and hedonic.  Plaintiffs allege that their injuries were caused due to the dangerous conditions at the subject premises, and that the Defendants had a duty of care.  Plaintiffs have also suffered economic loss as a result of this incident.  The children of the plaintiffs have also suffered, and this complaint will be amended at a later date to include their claims and name their guardians ad litem.

CLASS ALLEGATIONS

37.      Class Plaintiffs bring this action on their own behalf and pursuant to Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure and seek to pursue claims for damages, injunctive and declaratory relief on behalf of themselves and all persons similarly situated.

38.      The proposed class consists of individuals who resided at Gateway Apartments and were subjected to warrantless intrusions and searches. Each class member was and is subject to the deteriorating conditions at Gateway Apartments, including the safety and health hazards which currently existing.

39.      Plaintiffs allege that their Fourth and Fourteenth Amendment rights under the United States Constitution and their Article 1, Sections 7, 13, 17 and 31 rights under the California Constitution were violated; raising common questions of law and fact.

40.   The class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. Rule 23(a)(1). Upon information and belief, plaintiffs allege that there are in excess of 500 individuals who reside amongst the 170 apartments of Gateway Apartments, and that all of the proposed class members have been denied meaningful due process, and have had their federal and state constitutional rights enumerated herein, violated. The identity of class members is easily identifiable using records maintained by the Owners in the ordinary course of business. There are questions of law and fact common to the members of the class. The questions include, but are not limited to:

a)   whether warrantless intrusions, even under the guise of a housing code inspection, by civilian employees and/or sworn offices of the SPD into individual's homes is a violation of the 4th amendment right against search and seizure;

b)   whether civilian employees and/or sworn offices of the SPD's warrantless searches of plaintiff and class members personal property, constitute illegal searches, and are violations of the protections offered by the 4th and 14th amendments to the United States Constitution;

c)   whether the pattern and practice of the City of Stockton and SPD of targeting low-income apartments, which contain a majority of African American, Hispanic and disabled residents while permitting other rental units without low income tenants, without a majority of African American, Hispanic or who do not contain any disabled residents, to "self-inspection" is a violation of the equal protection rights provided under the 14th Amendment of the United States Constitution.

d)   Whether the pattern and practice of the City of Stockton and SPD in forcibly closing and evicting tenants under the guise of housing code issues is an illegal and unconstitutional taking prohibited by the 5th Amendment of the United States, and Article 1 of the California Constitution.

e)   Whether Defendants City of Stockton and the Stockton Police's actions constituted deliberate indifference to conditions of Plaintiffs' and Class members housing, by failing to appropriately enforce Stockton's Municipal Code to insure that Gateway Apartments met the State and local health and housing code standards and such indifference violated the Equal Protection Clauses of the United States and California Constitutions.

f)  Whether the invasion of cockroaches; the mold; the broken windows; the garbage, debris and glass in the common public areas; the increased crime and the regular, daily trespass through Gateway Apartments of individuals engaged in criminal activity; the failure of Owners to secure the vacant units from illegal activities so that criminals are coming and going from Gateway Apartments so much so that tenants are afraid to be outside or to permit their children to play outside; constitutes a breach of the warranty of habitability that affects all residents at Gateway Apartments.

g)  Whether Owners' poor quality maintenance (even in the instances when maintenance is undertaken); the failure to conduct repairs in a workmanlike manner;  Owners' failure to hire properly trained and capable maintenance workers, so that any repairs made are substandard and poor quality; constitute breaches of the warranty of habitability that affects all residents at Gateway Apartments.

h)  The public entity defendants are expected to raise a common defense, including that these practices and policies violate constitutional rights.

i)  The Owners are expected to raise a common defense, including that there are no breaches of the warranty of habitability.

41.    The claims of the plaintiffs are typical of those of the plaintiff class, as their claims arise from the same policies, practices, courses of conduct, and conditions of confinement, and their claims are based on the same legal theories as the class' claims. The cause of the named plaintiffs' injuries is the same as the cause of the injuries suffered by the rest of the class. Injunctive and/or declaratory relief for the class as a whole is appropriate.

42.    Plaintiffs are capable of fairly and adequately protecting the interests of the plaintiff class because plaintiffs do not have any interests antagonistic to the class. Plaintiffs, as well as class members, seek to enjoin the unlawful acts, policies, and practices of the defendants.

43.    This action is maintainable as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(1) because the number of class members is numerous and prosecution of separate actions by individuals create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for defendants. Moreover, the prosecution of separate actions by individual members is costly, inefficient, and could result in decisions with

respect to individual members of the class that, as a practical matter, would substantially impair the ability of other members to protect their interests.

44.    This action is also maintainable as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(2) because defendants' policies and practices that form the basis of this Complaint are generally applicable to all the class members, thereby making class-wide declaratory and

45.     Injunctive relief is appropriate. Common questions of law and fact clearly predominate within the meaning of Rule 23(b)(3) as set forth above. Class treatment provides a fair and efficient method for the adjudication of the controversy herein described, affecting a large number of persons, joinder of whom is impracticable.

**CLAIMS FOR RELIEF**

46.    Claims 1 through 5 against the entity defendants: the City of Stockton, the Stockton Police and their employees and agents including  defendants Kurt Wilson, Eric Jones, Trevor Womack, Tom Jerrigan, Peter Lemos, Chuck Lamar , Lane , Daniel J. Garcia, And Swain.

47.    Claims 6 through 13 are against the Owners, Ravi N. Sanwal, Manita Sanwal, Mooni Sanwal, and The Ravi N. Sanwall And Manita Sanwall Living Trust.

FIRST CLAIM FOR RELIEF

Violation of the Fourth Amendment Right Against Search and Seizure

(42 U.S.C § 1983)

48.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this Complaint.

49.    Plaintiffs advance this claim on their own behalf, and on the behalf of all class members, and against the entity defendants: the City of Stockton, the Stockton Police and their employees and agents including  defendants Kurt Wilson, Eric Jones, Trevor Womack, Tom Jerrigan, Peter Lemos, Chuck Lamar , Lane , Daniel J. Garcia, And Swain.

50.    Said entity defendants have engaged in a course of conduct  which repeatedly violated Plaintiffs' and class members' rights under the Fourth Amendment to be safe from search and seizure.

SECOND CLAIM FOR RELIEF

(Equal Protection – Targeting Plaintiffs Based upon Race, Class and Disability)

(42 U.S.C. § 1983)

51.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this complaint.

52.    Plaintiffs advance this claim on their own behalf, and on behalf of all class members against and against the entity defendants: the City of Stockton, the Stockton Police and their employees and agents have violated plaintiffs and class members rights to equal protection pursuant to the 14th Amendment, when they targeted Plaintiffs and allowed other tenants to be self inspected by the property Owners.

53.    Said defendants are not entitled to target those who are low-income, or African American, or Hispanic, or disabled to impermissibly invade their homes, while permitting more affluent, able bodied, and white tenants to avoid these invasions through self –inspection. Defendants deliberately chose to target plaintiffs and class members in violation of the Fourteen Amendments to the United States Constitution; and, Article 1 §§7 & 17 of the California Constitution.

THIRD CLAIM FOR RELIEF

(Equal Protection - Inadequate Enforcement of Health, Housing and Public Safety Codes)

(42 U.S.C. § 1983)

54.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this complaint.

55.    Plaintiffs advance this claim on their own behalf, and on behalf of all class members against and against the entity defendants: the City of Stockton, the Stockton Police and their employees and agents have violated plaintiffs and class members rights to equal protection pursuant to the 14th Amendment, when said defendants demonstrated deliberate indifference to the actual housing code, public safety and health problems that plaintiffs and class members were forced to endure at Gateway Apartments.

56.    Despite the continual problems with housing and health code violations, and innumerable "inspections", said defendants did not enforce, or act to insure that plaintiffs and class members

lived in clean, sanitary, and well maintained apartments.  Despite the continual problems with garbage, glass, and detritus which posed health and safety issues, particularly to children who played in the common areas of Gateway apartments, and numerous and innumerable "inspections", said defendants did not enforce, or act to insure that plaintiffs and class members lived in clean, sanitary, and well maintained apartments, with clean, safe and properly maintained common areas.

57.    Despite the continual problems with squatters and non-tenants engaging in illegal activities in vacant units, the public safety issues created by the comings and goings of said individuals and repeated complaints by plaintiffs and Owners, defendants failed to take appropriate action to the serious public safety issues this presented.

58.    Defendants' actions and failures to act in carrying out their responsibilities to insure the public safety, to properly conduct code enforcement to improve the physical condition of Gateway Apartments, and to insure that the housing meet state and local health and building standards violations of said Plaintiffs' right to the equal protection of laws as secured by the fourteenth Amendment to the United States Constitution.

FOURTH CLAIM FOR RELIEF

Negligence

59.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this complaint.

60.    Plaintiffs advance this claim on their own behalf, and on behalf of all class members against the entity defendants.

61.    Defendants have a duty of care to plaintiffs to ensure that defendants did not cause unnecessary or unjustified harm to plaintiffs, and a duty of care to hire, train, supervise and discipline SPD officers and employees so as to not cause harm to plaintiffs and to prevent violations of plaintiffs' constitutional, statutory and common law rights.

62.    The above-described acts breached the duty of care said defendants owed the Plaintiffs and class members.

FIFTH CLAIM FOR RELIEF

Intentional Infliction of Emotional Distress

63.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this complaint.

64.     Plaintiffs advance this claim on their own behalf, and on behalf of all class members against all defendants.

65.     Defendants Chuck LaMar , Lane, Daniel J. Garcia, and Swain actions threatening Plaintiffs and class members with criminal prosecution, excessive fines, and homelessness was outrageous conduct, and far in excess of their legal rights and police powers.

66.     Said defendants acted with reckless disregard of the probability that Plaintiffs and class members would suffer emotional distress, when said defendants, in the company of an armed police officer, criminal prosecution, excessive fines, and homelessness.  Said defendants' actions were particularly reckless in light of the history of the SPD in shooting unarmed civilians, the protests within the City of Stockton against the SPD's use of excessive force, and the national issues regarding the use of excessive force by police departments all across the country, stemming from the shooting deaths of black men in Staten Island and Ferguson, Missouri.

67.     Plaintiffs and class members suffered severe emotional distress.  Said defendants conduct was a substantial factor in causing Plaintiffs' severe emotional distress.


SIXTH CAUSE OF ACTION

(CC 1714)

68.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this complaint.

69.     Defendants Owners' actions violate CC 1714, the landlords' duty of care under California law. and Defendants are liable for general and special damages.


SEVENTH CAUSE OF ACTION

(CC 1941.1)

70.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this

1  complaint.

2  71.     Defendants Owners' actions violated CC 1941.1, as the conditions at the premises violate

3  the standards of habitability defined by state law.

4

5                          EIGHTH CAUSE OF ACTION

6                                (Negligence)

7  72.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this

8  complaint.

9  73.     Defendants Owners' actions violated existing state law and constituted negligence.

10  Because these actions violated state law, they constitute negligence per se.

11

12                          NINTH CAUSE OF ACTION

13                                (Nuisance)

14  73.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this

15  complaint.

16  75.     Defendants Owners' actions violated existing state law and constituted a nuisance.

17

18                          TENTH CAUSE OF ACTION

19                              (Premises liability)

20  76.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this

21  complaint.

22  77.     Defendants Owners' actions violated existing state law and constituted premises liability.

23

24                          ELEVENTH CAUSE OF ACTION

25                          (Covenant of quiet enjoyment)

26  78.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this

27  complaint.

79.     Defendants Owners' actions violated existing state law defining the implied covenant of quiet enjoyment found in every residential rental contract in California..

TWELTH CAUSE OF ACTION

(Warranty of habitability)

80.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this complaint.

81.     Defendants Owners' actions violated existing case law defining the implied warranty of habitability found in every residential rental contract in California.

THIRTEENTH CAUSE OF ACTION

(Unlawful business practice)

81.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 of this complaint.

82.     Defendants Owners' actions violated Business and Professions Code Section 17200 et seq.  The pattern and practice of unlawful conduct described above constitutes an unlawful and/or unfair business practice.   Said unlawful conduct includes the intentional, illegal and felonious theft and removal of mail from Plaintiffs' and class members' mailbox, a violation of 18 USC §1708.

**REQUISITES FOR RELIEF**

84.     Plaintiffs are informed and believe that the violations of the plaintiffs' constitutional and lawful rights complained of herein were caused by customs, policies, directives, practices, acts and omissions of authorized policy makers of the defendants CITY OF STOCKTON, STOCKTON POLICE DEPARTMENT, KURT WILSON, ERIC JONES, TREVOR WOMACK, TOM JERRIGAN, PETER LEMOS, Does 1 thru 25, and
other supervisory officials and employees of the CITY OF STOCKTON and the STOCKTON POLICE DEPARTMENT who encouraged, authorized, directed, condoned, and ratified the

1  unconstitutional and unlawful conduct complained of herein. Said customs, policies and

2  practices include, but are not limited to the use of the pretext of housing code violation

3  inspections to justify warrantless entries and warrantless searches.

4  85.    As a direct and proximate result of the conduct of defendants described herein, the

5  named individual plaintiffs have been denied their constitutional, statutory and legal rights as

6  stated below, and have suffered general and special damages, including but not limited to,

7  mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation,

8  discomfort, and anxiety and other damages in an amount according to proof.

9  86.    Defendants' acts were willful, wanton, malicious and oppressive and done with

10  conscious disregard and deliberate indifference for plaintiffs' rights.

11  87.    Defendants' policies, practices, customs, conduct and acts alleged herein have resulted

12  and will continue to result in irreparable injury to plaintiffs, including but not limited to

13  violations of their constitutional and statutory rights. Plaintiffs have no plain, adequate or

14  complete remedy at law to address the wrongs described herein. The Plaintiffs and many class

15  members live and intend to continue living at Gateway Apartments.

16  88.    Defendants' conduct described herein has created fear, anxiety and uncertainty among

17  Plaintiffs with respect to their exercise, now and in the future, of their constitutional rights, and

18  the safety and sanctity of their homes.   Plaintiffs therefore seek injunctive relief from this court,

19  to ensure that Plaintiffs and persons  similarly situated will not suffer violations of their rights

20  from defendants' illegal and unconstitutional policies, customs and practices as described herein.

21  89.    An actual controversy exists between plaintiffs and defendants in that plaintiffs

22  contend that the policies, practices and conduct of defendants alleged herein are unlawful and

23  unconstitutional, whereas plaintiffs are informed and believe that defendants contend that said

24  policies, practices and conduct are lawful and constitutional. Plaintiffs seek a declaration of

25  rights with respect to this controversy.

26                                    PRAYER

27        Plaintiffs and the class they represent have no adequate remedy at law to redress the

wrongs suffered as set forth in this Complaint.

        WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as

follows:

1.      For an order certifying the class defined herein pursuant to Federal Rules of Civil Procedure Rules 23(a) and 23(b);

2.      For preliminary and permanent injunctive relief restraining defendants from engaging in the unlawful and unconstitutional actions complained of above;

3.      For a declaratory judgment that defendants' conduct complained of herein was a violation of plaintiffs' rights under the Constitution and laws of the United States and California;

4.      For general and compensatory damages for violation of plaintiffs' federal and state constitutional and statutory rights, pain and suffering, all to be determined according to proof;

5.      For exemplary and punitive damages as to defendants Chuck LaMar, Lane, Daniel J. Garcia and Swain for the intentional falsehoods, deliberate violations of Plaintiffs' constitutional rights, and the deliberate infliction of emotional distress.

6.      For exemplary and punitive damages as to defendants Ravi N. Sanwal, Manita Sanwal, Mooni Sanwal, And The Ravi N. Sanwall And Manita Sanwall Living Trust for the deliberate theft and removal of plaintiffs and class members' mail.

6.      For an award of statutory damages and penalties pursuant to Cal. Civil Code §52(b) to be determined according to proof;

7.      For attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code section 52(b) and §52.1(h), and California Code of Civil Procedure §1021.5;

8.      For costs of suit;

9.      For pre- and post-judgment interest as permitted by law;

10.     For such other and further relief as the Court may deem just and proper.

11.     Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  September 8, 2015              LAW OFFICE OF YOLANDA HUANG
                                      Attorneys for Plaintiffs
                                      Carmen Slaughter, et al.


                                      By: ___/s/ Yolanda Huang_____

                                          YOLANDA HUANG